NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

RAJESH KUMAR,

                *Plaintiff*,

  v.

THE INSTITUTE OF ELECTRICAL AND ELECTRONICS ENGINEERS, INC.,

                *Defendant*.

Civ. Action No. 12-6870 (KSH) (CLW)

**OPINION**

**Katharine S. Hayden, U.S.D.J.**

**I. Introduction**

This matter is before the Court on a motion to dismiss [D.E. 13] brought by defendant, the Institute of Electrical and Electronics Engineers, Inc. (the "Institute"). Plaintiff Rajesh Kumar ("Kumar") filed a two-count complaint against the Institute, alleging that it infringed his copyright in a doctoral thesis he prepared while he was a graduate student. Kumar seeks injunctive relief, monetary damages, and declaratory judgment, along with costs and attorneys' fees, for what he contends is the Institute's unlawful copying and preparation of derivative works based on the thesis. In seeking dismissal, the Institute contends that the material at issue is not copyright-eligible, and that in any event the two works in question are not substantially similar such that Kumar can establish a copyright violation. The Institute also seeks attorneys' fees under 17 U.S.C. § 505.

## II. Factual Background

Kumar's complaint paints the scene as follows. In 2001, Kumar published a doctoral thesis entitled "An Augmented Steady Hand System for Precise Micromanipulation" (the "Thesis"), which was based on work he performed when he was a computer science graduate student at Johns Hopkins University. [Compl. ¶¶ 7-9.] Broadly stated, the Thesis concerned a way in which a surgical tool can be "manipulated cooperatively by a human user and a robot" during eye surgery known as retinal vein cannulation. [Compl. ¶ 8.] In September 2001, he registered the Thesis with the U.S. Copyright Office. [Compl. ¶ 10.]

In 2003, as part of a conference on intelligent robots, the Institute published an article entitled "Task Modeling and Specification for Modular Sensory Based Human-Machine Cooperative Systems" (the "Article"). [Compl. ¶ 11.] Kumar alleges that the Article is based on the Thesis and "describes the same problem, experimentation and solution as the Thesis." [Compl. ¶ 14.] The Article allegedly copies specific text and graphics from the Thesis, but does not identify Kumar as an author and incorrectly cites the Thesis. [Compl. ¶¶ 15, 17-18.] Moreover, the Article describes work that "was performed at the same laboratory, using the same equipment, as that in the Thesis." [Compl. ¶ 14.] Kumar "did not authorize [the Institute] to publish the Article," which has been available for sale since 2003 or 2004 on the Institute's publications database. [Compl. ¶¶ 19, 13.]

Kumar did not learn about the Article until 2010. [Compl. ¶¶ 21, 22.] Thereafter, Kumar, and later his lawyer, sent the Institute notifications that the Article infringed upon his copyright. [Compl. ¶ 23.] The Institute refused to take corrective action [Compl. ¶ 25], and in 2012 Kumar filed this lawsuit, alleging that the Institute infringed his copyright. He seeks a declaratory judgment to that effect, as well as damages, costs and attorneys' fees, and a

2

preliminary and permanent injunction prohibiting the Institute from reproducing, distributing, displaying, offering for sale and/or selling, or performing the Article, or anything substantially similar to it. The Institute has moved for dismissal under Fed. R. Civ. P. 12(b)(6) for failure to state a claim for which relief can be granted. [D.E. 13.]

### III. Standard of Review

The Federal Rules of Civil Procedure require a complaint to contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court, first in *Bell Atlantic Corp. v. Twombly* and then in *Ashcroft v. Iqbal*, reshaped the standards for evaluating whether a complaint has sufficiently pleaded a claim for relief, setting out a "plausibility" standard. *See generally Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

In the wake of those decisions, the Third Circuit has provided the Court with touchstones to employ in following the *Twombly* and *Iqbal* "plausibility" mandate. Civil complaints must "set out 'sufficient factual matter' to show that the claim is facially plausible. This then 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678). The complaint "must contain 'more than an unadorned, the-defendant-unlawfully-harmed-me accusation.'" *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678).

Thus, while "[t]he plausibility standard is not akin to a 'probability requirement,'" it does "ask[] for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556). If "'the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not "show[n]"—"that the pleader is entitled to relief."'" *Fowler*, 578 F.3d at 211 (alteration in

3

original) (quoting *Iqbal*, 556 U.S. at 679). At this stage, the plaintiff need not establish all of the elements for a *prima facie* case, but "need only put forth allegations that 'raise a reasonable expectation that discovery will reveal evidence of the necessary element.'" *Id.* at 213 (citation omitted). The "'plausibility' determination" is, at bottom, "'a context-specific task'" requiring the Court "'to draw on its judicial experience and common sense.'" *Id.* at 211 (quoting *Iqbal*, 556 U.S. at 679).

The Court's plausibility inquiry is typically limited to the four corners of the complaint. But "a court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993). Because the Institute included undisputedly authentic copies of the Thesis and Article as attachments to its motion to dismiss, it is proper for the Court to take them into consideration without converting this motion into one for summary judgment. *See Winstead v. Jackson*, 509 F. App'x 139, 142-43 (3d Cir. 2013) (per curiam).

The Institute urges the Court to consider two other documents as well, specifically, pre-litigation letters from Kumar's attorney that – among other things – recite excerpts from the Thesis and the Article that allegedly evidence copying. The Institute proceeds to make its arguments for dismissal based on the excerpts because "the allegedly infringed and infringing materials are not specified in Kumar's pleading." [*See* Def.'s Br. at 4-10, 13-20.] The Institute proposes that the Court can consider these pre-litigation documents on the basis that they are "referenced in" the complaint, and that the complaint effectively "acknowledges" them. [Def.'s Br. at 3 n.1, 4.] But this is a stretch—what the complaint states on this issue is as follows:

> 23. Dr. Kumar notified [the Institute] of the infringement in writing, first on his own and later through counsel.

24. Dr. Kumar also requested that [the Institute] take corrective action, consistent with its internal policy regarding plagiarism.

[Compl. ¶¶ 23, 24.]

The fact that the complaint alleges that Kumar gave written notice to the Institute of the alleged infringement and requested it take corrective action does not make the complaint "based on" that written notice. Likewise, the letters are neither "integral to [n]or explicitly relied upon" in Kumar's complaint, *In re Burlington Coat Factory Securities Litigation*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis, citation, and internal quotation marks omitted), nor do they constitute allegations within the complaint, exhibits attached to it, or matters of public record, *Lum v. Bank of America*, 361 F.3d 217, 221 n.3 (3d Cir. 2004). The Court, therefore, declines to consider the correspondence.[1]

## IV. <u>Analysis</u>

Kumar has alleged that he authored and owns a copyright on a work "describ[ing] a system for 'steady hand manipulation,' in which a surgical tool is manipulated cooperatively by a human user and a robot," and that the work "explores 'encoding/utilizing task descriptions to improve transparency and performance of a steady hand manipulation task' in the particular context of retinal vein cannulation." [Compl. ¶¶ 7, 8.] According to the complaint, the Institute published an article "based on, and not distinguishable from," Kumar's work, and made it available to attendees at a conference and on its publications database. [Compl. ¶¶ 11-14.] The complaint alleges that this piece "describes the same problem, experimentation and solution as the Thesis," and "[t]he work described in the Article was performed at the same laboratory, using the same equipment, as that in the Thesis." [Compl. ¶ 14.] Further, "[t]he Article contains text

---

[1] To the extent that the Institute seeks to limit Kumar to the examples in the letters, the Court will not do so where Kumar has sufficiently alleged a claim for copyright infringement more broadly.

and graphics that are copied from and/or substantially similar to protectable material contained in the Thesis," and "is a derivative work of the Thesis." [Compl. ¶¶ 15, 16.] Considered in light of the applicable law, these allegations "set out 'sufficient factual matter' to show that the claim is facially plausible," and permit the Court to reasonably infer that the Institute is liable for infringing Kumar's copyright. *See Fowler*, 578 F.3d at 210 (quoting *Iqbal*, 556 U.S. at 678).

Before examining the Institute's central theory on why dismissal is warranted, the Court briefly reviews the elements of a copyright claim such as Kumar's. "To establish a claim of copyright infringement, the plaintiff must establish [1] ownership of a valid copyright, and [2] unauthorized copying of protectable elements of the plaintiff's work." *Winstead*, 509 F. App'x at 143 (citing *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 206 (3d Cir. 2002)). "Copying" contemplates use of the plaintiff's work in a way that interferes with any of a copyright owner's rights under 17 U.S.C. § 106, which include the exclusive right to reproduce the work in copies, distribute copies of the work, and prepare derivative works based on it. *Ford Motor Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 291 (3d Cir. 1991). *See also* 17 U.S.C. § 501(a) (providing that "[a]nyone who violates any of the exclusive rights of the copyright owner" under 17 U.S.C. § 106 is a copyright infringer).

Unauthorized copying can either be shown by direct evidence, or, more commonly, inferentially by a showing that the alleged infringer had access to the copyrighted work and that the copyrighted and allegedly infringing works are substantially similar. *Whelan Assocs., Inc. v. Jaslow Dental Lab., Inc.*, 797 F.2d 1222, 1231-32 (3d Cir. 1986). Substantial similarity is evaluated by a two-step test. First, with the benefit of expert testimony where necessary, the fact-finder determines "whether there is sufficient similarity between the two works in question to conclude that the alleged infringer used the copyrighted work in making his own." *Id.* at

1232. If the Court finds there was such actual copying, the second inquiry is whether, from an "ordinary observer's" perspective, "the copying was 'illicit,' or 'an unlawful appropriation' of the copyrighted work," *id.*, or, in other words, whether the copying reached "protectible aspects" of the work, *Dam Things From Denmark v. Russ Berrie & Co., Inc.*, 290 F.3d 548, 562 (3d Cir. 2002). No expert testimony is permitted. *Whelan Assocs.*, 797 F.2d at 1232. When the matter at issue is complex, the bifurcated substantial similarity test becomes a "single . . . inquiry" permitting both lay and expert testimony. *Id.* at 1232-33. The single-step test accounts for the inutility of an "ordinary observer" perspective when a copyright case deals with "exceptionally difficult materials," such as computer programs. *Id.* at 1233.[2]

Here, Kumar has alleged that he is "the author and copyright owner" of the Thesis, that it is an "original work subject to copyright," and that it is registered with the United States Copyright Office. [Compl. ¶¶ 1, 7, 9, 10.] Although legal conclusions like Kumar's assertion that his work is "original" may be disregarded in evaluating whether a plaintiff has stated a claim, *see Fowler*, 578 F.3d at 210-11, the Institute concedes that "the Thesis as a whole is entitled to copyright protection." [Def.'s Br. at 1, 12.] *See also* 17 U.S.C. § 410(c) (providing that certificate of registration constitutes "prima facie evidence of the validity of the copyright and of the facts stated in the certificate"). Accordingly, Kumar has sufficiently pleaded his

---

[2] The Court recognizes from scholarship in recent district court opinions that there is a more detailed approach to determining the elements to be pleaded for a copyright infringement claim based on the 1979 decision in *Gee v. CBS, Inc.*, 471 F. Supp. 600 (E.D. Pa. 1979), *aff'd*, 612 F.2d 572 (3d Cir. 1979). *See Levey v. Brownstone Inv. Grp., LLC*, No. 11-395 (ES), 2013 WL 3285057, at *5 (D.N.J. June 26, 2013) (Salas, J.); *Bradshaw v. Am. Inst. for History Educ.*, No. 12-1367 (RBK)(KMW), 2013 WL 1007219, at *3-4 (D.N.J. Mar. 13, 2013) (Kugler, J.). In the absence of direction from the Third Circuit, and because the facts pleaded in this case support the application of the standard set out in, *inter alia*, *Winstead*, *Dun & Bradstreet*, and *Whelan*, the Court declines to engraft a *Gee* analysis.

"ownership of a valid copyright" for purposes of the motion to dismiss. *See Winstead*, 509 F. App'x at 143.

Kumar has likewise sufficiently pleaded that one or more of his exclusive rights as a copyright owner is implicated by the Institute's publication of the Article. Kumar alleges that the Institute has infringed upon his rights in that "[t]he Article is based on, and not distinguishable from, the Thesis"; that "[t]he Article contains text and graphics that are copied from and/or substantially similar to protectable material contained in the Thesis"; and that it "is a derivative work of the Thesis." [Compl. ¶¶ 14-16.]³ The complaint also avers that the Article was made available to attendees at a 2003 conference and on the Institute's publications database, where it is available for sale. [Compl. ¶¶ 11, 13.]

The Institute argues that Kumar's complaint inadequately pleads "unauthorized copying of protectable elements" of the Thesis because he has not alleged infringement of copyrightable material and that in any event the works are not substantially similar. *See Winstead*, 509 F. App'x at 143 (reciting elements of copyright infringement claim). Neither argument warrants dismissal of Kumar's complaint.

The Institute devotes a great deal of argument to whether the material at issue represents an uncopyrightable idea as opposed to copyrightable expression. [*See* Def.'s Br. at 12-17; Def.'s

---

³ Kumar contends, as a separate grounds for opposing the Institute's motion to dismiss, that the Institute failed to address his "independent infringement claim" for infringement of a derivative work. [Plf.'s Opp. Br. at 2, 24-28.] However, the right to prepare derivative works is simply one of the rights accorded every copyright owner under 17 U.S.C. § 106, and the infringement test described above applies where the derivative-works right is allegedly implicated, just as it applies when the right invoked is, for example, the exclusive right to reproduce the work in copies. *See Ford Motor Co.*, 930 F.2d at 291 ("[C]opying is demonstrated when someone who has access to a copyrighted work uses material substantially similar to the copyrighted work in a manner which interferes with a right protected by 17 U.S.C. § 106.").

Reply Br. at 4-8.] Substantive law teaches that copyright protection is available for the expressive aspects of original works of authorship, but not for any ideas expressed in the work. *See* 17 U.S.C. § 102(a)-(b). The exclusion reaches "any idea, procedure, process, system, method of operation, concept, principle, or discovery." *Id.* § 102(b). The principle that "copyright will not protect an idea, only its expression" is "simple to state . . . but difficult to apply, especially in the context of computer programs." *Tetris Holding, LLC v. Xio Interactive, Inc.*, 863 F. Supp. 2d 394, 400 (D.N.J. 2012) (Wolfson, J.). To distinguish idea from expression in the context of a "utilitarian work," such as a computer program or the structure thereof, the Third Circuit uses a test that examines "the purpose or function" of the work, which is the idea, and "everything . . . not necessary to that purpose or function," which is the expression. *Whelan Assocs.*, 797 F.2d at 1236 (emphasis omitted). If there are multiple ways to achieve the purpose, "then the particular means chosen is not necessary to the purpose; hence, there is expression not idea." *Id.* Thus, while an idea is not copyrightable, a description of an idea can generally qualify as expression if there are multiple means of describing the idea. The test contemplates inquiry into the "purpose" of a utilitarian work, and into the options an author has for carrying out (or describing) that purpose.

But the Court's task at this point is not to determine on the merits whether the Thesis contains only ideas and no expression. Rather the Court must assess whether Kumar's complaint provides sufficient factual information from which it may be reasonably inferred that the Institute trod on protectable grounds in publishing the Article. *See Fowler*, 578 F.3d at 210.

Kumar's complaint satisfies this test. He has pleaded that the Thesis "describes" a system involving cooperative manipulation of a surgical tool, and "explores" "encoding/utilizing task descriptions to improve transparency and performance of a steady hand manipulation task"

9

in a specific medical context. [Compl. ¶ 8.] He alleges that the Article "describes the same problem, experimentation, and solution as the Thesis – namely 'human-machine cooperative systems' in the specific context of vitro-retinal eye surgery." [Compl. ¶ 14.] He further states that the work "described" in the Article was carried out in the same laboratory and with the same equipment "as that in the Thesis," and that "text and graphics" appear in the Article that are "copied from and/or substantially similar to protectable material" in the Thesis. [Compl. ¶¶ 14, 15.]

The Institute's argument, in repeatedly invoking Kumar's use of terms such as "system" in the complaint and in the Thesis, relies too heavily on labels and ignores the nuanced nature of the idea/expression inquiry. As Kumar succinctly puts it, "[o]n a Rule 12(b)(6) motion, the Court cannot presume that there is only one way to express" the various content the Article allegedly copies from the Thesis. [Plf.'s Opp. Br. at 21-22.]

In sum, Kumar has provided sufficient information for the court to infer, at this stage, that protectable material underlies his copyright infringement claim.

Moreover, examination of the cases the Institute cites in support of its contention that the matter at issue is not copyrightable reinforces the inappropriateness of determining at the motion to dismiss stage whether the material in question is "expression." [*See* Def.'s Br. at 12-16; Def.'s Reply Br. at 4-8.] In none of these cases was a court considering the type of complex subject matter reflected in the Article and the Thesis on a Rule 12(b)(6) motion to dismiss. *See, e.g.*, *Baker v. Selden*, 101 U.S. 99, 100 (1880) (parties "went into proofs" and witnesses testified in case involving bookkeeping system and forms); *Whelan Assocs.*, 797 F.2d at 1228 (appeal following bench trial); *Pazienza v. Saint Barnabas Med. Ctr.*, 921 F. Supp. 1274 (D.N.J. 1995) (Lifland, J.) (granting summary judgment for defendant in case involving business proposal for

cosmetology center); *Hassett v. Hasselbeck*, 757 F. Supp. 2d 73, 78, 82 (D. Mass. 2010) (after converting defendants' motion to dismiss to motion for summary judgment, granting it in case involving self-help books on celiac disease); *Igram v. Page*, No. 98 C 8337, 1999 WL 705895 (N.D. Ill. Aug. 27, 1999) (granting motion for preliminary injunction in case involving books on nutrition); *DeBitetto v. Alpha Books*, 7 F. Supp. 2d 330, 332, 336 (S.D.N.Y. 1998) (granting "motion to dismiss and for summary judgment" in part in case involving books regarding caring for dogs). In *Pino v. Viacom, Inc.*, for example, the Court granted the defendant's motion to dismiss or for summary judgment (which it converted to a motion for summary judgment) where the works at issue were a script treatment, a screenplay, and a reality television program concerning athletic contests between professional and amateur athletes. *Pino*, No. 07-3313 (AET), 2008 WL 704386, at *1, 2, 4 (D.N.J. Mar. 4, 2008) (Thompson, J.). *See also Winstead*, 509 F. App'x at 140 (affirming dismissal of copyright infringement claim under R. 12(b)(6) where works at issue were a book, an album of music, and a film).

The Institute relies on *Ho v. Taflove*, 696 F. Supp. 2d 950, 952 (N.D. Ill. 2010), *aff'd*, 648 F.3d 489 (7th Cir. 2011), a case involving a mathematical model, in arguing for dismissal on the basis that Kumar does not allege infringement of material that is copyrightable. [*See* Def.'s Br. at 14-15.] The Court has reviewed the opinion in full, and it is evident from the analysis that the district court had the benefit of considering the defendants' motion for summary judgment *after* extensive discovery had taken place. *See, e.g.*, *id.* at 953 n.5 (referencing interrogatory responses).

In contrast, in *Whelan*, where the Third Circuit had to decide whether the "non-literal" elements of a computer program (*i.e.*, the structure, or "sequence and organization") were copyrightable, or, alternatively, whether only the "literal" elements (*i.e.*, the source and object

11

code) were protectable, the district court took expert testimony during a three-day bench trial. *Whelan Assocs.*, 797 F.2d at 1224-25, 1228, 1233-34. The need for a full record demonstrated in *Whelan*, which presented similar facts, further counsels against disposition of the copyrightability question at the motion-to-dismiss stage.

In addition to sufficiently pleading the infringement of "protectable" material, Kumar has adequately alleged "unauthorized copying." He has alleged that the work in the Thesis and in the Article was carried out in the same laboratory and with the same equipment. [Compl. ¶ 14.] Kumar has further pleaded that "[t]he Article is based on, and not distinguishable from, the Thesis," and that it "describes the same problem, experimentation and solution as the Thesis." [Compl. ¶ 14.] The Article allegedly "contains text and graphics that are copied from and/or substantially similar to protectable material contained in the Thesis." [Compl. ¶ 15.] The Institute would have the Court go further, and require Kumar to make his case for substantial similarity on the merits at this early stage. But *Whelan* illustrates that "sufficient similarity" for purposes of establishing actual, or factual, copying can be decided with the benefit of expert testimony, and that in particularly complicated cases expert testimony can also be used in evaluating whether any actual copying reached protectable aspects of the copyrighted work. *Whelan Assocs.*, 797 F.2d at 1232-33. Given the complexity of the subject matter at issue, and the requirement that in evaluating substantial similarity the Court "make a qualitative, not quantitative, judgment about the character of the work as a whole and the importance of substantially similar portions of the work," *see id.* at 1245-46, the Court will not foreclose that avenue of proof at this procedural juncture.

In sum, the Court rejects the Institute's merits based arguments and finds that the complaint adequately pleads copyright infringement. As a corollary, the Institute's application for an award of attorney's fees under 17 U.S.C. § 505 is denied.

## V. <u>Conclusion</u>

As Kumar has sufficiently pleaded a claim for copyright infringement, the Institute's motion to dismiss the complaint is DENIED. An appropriate order will issue.

Date: September 30, 2013

/s/ Katharine S. Hayden
Katharine S. Hayden, U.S.D.J.